702 A.2d 1038

**Rita SALAZAR and Celitia Salazar, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued April 30, 1997.

Decided Oct. 30, 1997.

Arnold Machles, Bala Cynwyd, for Rita Salazar & Cilitia Salazar.

Otis V. Maynard, Philadelphia, for Allstate Insurance Co.

Robert J. Foster, Philadelphia, for amicus curiae Trial Lawyers Assn.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

The issue presented in this appeal is whether an insurer may be granted summary judgment, as a matter of law, in an action to recover uninsured motorist (UM) benefits brought by resident relatives of the named insured, where the insurance policy renewal forms supplied to the policy's named insured failed to contain the notice required by section 1791.1 of the Motor Vehicle Financial Responsibility Law (MVFRL),[1] 75 Pa.C.S. § 1791.1.[2] For the reasons which follow, we conclude

1. Act of February 12, 1984, P.L. 26, as amended, 75 Pa.C.S. § 1701 *et seq.*

2. Act of February 7, 1990, P.L. 11, 75 Pa.C.S. § 1791.1.

that sections 1731, 1791, and 1791.1 of the MVFRL, 75 Pa.C.S. §§ 1731, 1791, and 1791.1, must be read in pari materia, and that an insurer must provide the notice required by section 1791.1 in policy renewal forms to inform the named insured of his or her options regarding coverage at the time of renewal. We hold, however, that because there is no remedy provided in the MVFRL for an insurer's failure to comply with the requirements of section 1791.1, the Superior Court's order in this matter, affirming summary judgment in favor of the insurer, must be affirmed.

Appellants, Rita Salazar and Celitia Salazar, are resident relatives of Ruby Brown. Ms. Brown's motor vehicle insurance is provided by Appellee Allstate Insurance Company through the Assigned Risk Plan (Plan).[3] Ms. Brown completed her original application for coverage on February 13, 1991, signing forms rejecting UM coverage. Ms. Brown subsequently renewed her policy without any alteration to her original coverage.

Appellants were involved in a hit-and-run collision on November 21, 1992 while in a vehicle owned by Ms. Brown and insured by Appellee. Appellants brought a civil action against Appellee in March of 1994 seeking UM benefits under Ms. Brown's policy.[4] Appellee subsequently filed a motion for summary judgment asserting Ms. Brown's waiver of UM coverage for her resident relatives in her policy. In response, Appellants asserted, *inter alia*, that Appellee's failure to comply with the requirements of section 1791.1 results in their entitlement to UM benefits under Ms. Brown's policy. Appellee did not dispute Appellants' allegation that it failed to comply with the notice provision of section 1791.1.

The trial court granted summary judgment in favor of Appellee, finding that Ms. Brown had waived UM coverage for her resident relatives in her application for original coverage and in her policy renewals pursuant to sections 1731 and 1791.

3. The "Assigned Risk Plan" is a program for the equitable apportionment of assigned risks and clean risks among insurers. *See* 75 Pa.C.S. § 1702.

4. Appellants allegedly had no other available motor vehicle coverage.

Upon an appeal by Appellants, the Superior Court affirmed, reasoning that, pursuant to sections 1731 and 1791, Ms. Brown is presumed to have knowingly and intelligently opted to waive UM coverage for her resident relatives in her application for original coverage, and further emphasizing that Ms. Brown continued to reject UM coverage upon her two subsequent policy renewals.[5]

We granted allowance of appeal limited to the issue of whether Appellee may be granted summary judgment, as a matter of law, in Appellants' action to recover UM benefits, where Appellee's policy renewal forms supplied to the policy's named insured failed to contain the notice required by section 1791.1 of the MVFRL.

■ In our review of a grant of summary judgment, we must determine whether there was an error of law or a clear or manifest abuse of discretion. *Panichelli v. Liberty Mutual Ins. Group*, 543 Pa. 114, 669 A.2d 930 (1996). Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. The moving party has the burden of proving the nonexistence of any genuine issue of material fact. The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1990).[6]

Appellants argue that the Superior Court inappropriately affirmed summary judgment on the basis of Ms. Brown's

**5.** *See Salazar v. Allstate Ins. Co.*, 450 Pa.Super. 264, 675 A.2d 1259 (1996). The Superior Court noted that, because of its disposition, it was not reaching the issue of whether Brown made a knowing and intelligent election of the limited tort option pursuant to section 1705 of the MVFRL, 75 Pa.C.S. § 1705. The validity of Brown's limited tort option election is not before this court in the present appeal.

**6.** We note that *Marks* was decided when Pa.R.C.P. 1035, pertaining to motions for summary judgment, was in effect; Pa.R.C.P. was rescinded February 14, 1996, effective July 1, 1996, and the rule now addressing motions for summary judgment is set forth at Pa.R.C.P. 1035.1 *et seq.*

waiver of UM coverage in her application for original coverage without regard to Appellee's non-compliance with the notice requirement of section 1791.1. While Appellee acknowledges in its brief that it did not "technically comply" with the notice requirement of section 1791.1, it urges that Superior Court's decision is proper because the renewal notices it provided to Ms. Brown contained sufficient information for her to make a knowing and intelligent waiver of UM coverage at policy renewal. Appellee further argues in its brief that, where the insurer fails to provide a valid rejection form, the remedy to the insured, pursuant to section 1731(c.1) of the MVFRL, is that UM or UIM coverage, or both, under that policy shall be equal to the bodily injury liability limits. Appellee contends, however, that section 1731(c.1) provides no such remedy for an insurer's failure to comply with the notice requirements of section 1791.1 in its renewal forms. Relying upon *Estate of John B. Franks v. Allstate Insurance Company,* 895 F.Supp. 77 (M.D.Pa.1995), and *Maksymiuk v. Maryland Casualty Insurance Company,* 946 F.Supp. 379 (E.D.Pa.1996), Appellee argues that, to provide Appellants UM coverage here in the amount of bodily injury liability limits for Appellee's failure to provide a proper renewal form would be to improperly reform the insurance contract and provide Appellants with a remedy to which they are not statutorily entitled.

This court presumes that the legislature intended for the entire MVFRL, including section 1791.1, to be applicable to Ms. Brown's decision on whether to purchase UM benefits coverage for her resident relatives. 1 Pa.C.S. § 1922(2). We agree with Appellants that sections 1731, 1791, and 1791.1 must be read in pari materia. *See Lucas v. Progressive Casualty Ins. Co.,* 451 Pa.Super. 492, 680 A.2d 873 (1996)(sections 1731 and 1791 must be read in pari materia). "Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. § 1932(a). Sections 1731, 1791, and 1791.1 each relate to an insured who is facing the decision of whether to purchase UM coverage and, if so, the amount of UM benefits coverage to purchase, both at the time of the in-

sured's application for original coverage and, later, at the time of policy renewal. Construing sections 1731, 1791, and 1791.1 in pari materia, it is apparent that the legislature intended that, before Ms. Brown made her decision, she would have all of the information regarding the scope and amount of coverage to purchase that the MVFRL requires Appellee to provide her.

■ At the time of Ms. Brown's application for original coverage, Appellee had to provide Ms. Brown with the notice required by section 1731(b), regarding the purpose for UM coverage and Ms. Brown's option to reject UM coverage, in order for Ms. Brown's waiver of UM coverage to be valid. Additionally, at the time of Ms. Brown's application for original coverage, since she opted not to purchase UM coverage, Appellee had to provide a rejection form which complied with the requirements of section 1731(c.1), specifically notifying Ms. Brown that her policy does not provide protection against damages caused by uninsured motorists. Further, section 1731(c.1) required that the policy renewal form Appellee provided Ms. Brown contain a notice, in prominent type, that the policy does not provide protection against damages caused by uninsured motorists. *See* section 1731.[7]

7. Section 1731 provides in pertinent part:
 (a) Mandatory offering.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
 (b) Uninsured motorist coverage.—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following rejection form:
 REJECTION OF UNINSURED MOTORIST PROTECTION
 By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by

Moreover, at the time of her application for original coverage, section 1791 required Appellee to provide notice to Ms. Brown of the benefits and limits available under the MVFRL in the type set required in section 1791. If Appellee complied with the notice requirement of section 1791, Ms. Brown is presumed to have been advised of the benefits and limits available under the MVFRL. *See* section 1791.[8]

> the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Signature of First Named Insured
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Date
>
> (c.1) Form of waiver.—Insurers shall print the rejection forms required by subsections (b) and (c) [pertaining to underinsured motorist coverage] on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.
>
> 75 Pa.C.S. § 1731.

**8.** Section 1791 provides in pertinent part:
It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:
(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at

Importantly, section 1791.1 required Appellee to provide Ms. Brown with an invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for Ms. Brown to purchase the minimum mandated coverages, both at the time of Ms. Brown's application for original coverage and at policy renewal. Further, section 1791.1 required Appellee to give Ms. Brown notice that she was required by Pennsylvania law to purchase only liability and first-party medical benefit coverages, and that any additional coverages or coverages in excess of the limits required by law are provided only if she requests such coverage as enhancements to her basic coverage. *See* section 1791.1.[9] Appellee admittedly did not technically comply with the requirements of section 1791.1.

least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.
Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.
Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.
If you have any questions or you do not understand all of the various options available to you, contact your agent or company. If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.
75 Pa.C.S. § 1791.

9. Section 1791.1 provides in pertinent part:
(a) Invoice.—At the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured an invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for the insured to purchase the minimum mandated coverages. The notice must contain the following notice in print of no less than tenpoint type:
The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverage. Any additional coverage in excess of the limits required by law are provided only at your request as enhancements to basic coverage.
The insurer shall provide the itemized invoice to the insured in conjunction with the declaration of coverage limits and premiums for the insured's existing coverages.

 Agreeing with the trial court's finding that Ms. Brown waived UM coverage pursuant to sections 1731 and 1791 at the time of her application for original coverage, the Superior Court concluded that the presumption of section 1791 was applicable to Ms. Brown without regard to Appellants' argument that the MVFRL provides a remedy for Appellee's failure to comply with the requirements of section 1791.1 at the time of policy renewal.

We find that the Superior Court erred in ruling that the presumption of section 1791 applied in this matter. The presumption of section 1791 is not a "catch-all" waiver which supersedes other waiver requirements of the MVFRL. *See Lucas.* The requirements of section 1791.1 are clear and unambiguous, and should not have been disregarded by the Superior Court. *See* 1 Pa.C.S. § 1921(b).

Moreover, the Superior Court's conclusion that Ms. Brown's waiver was knowingly and intelligently given at the time of her policy renewals, pursuant to the reasoning in *Botsko v. Donegal Mutual Ins. Co.,* 423 Pa.Super. 41, 620 A.2d 30 (1993), and *Tukovits v. Prudential Ins. Co. of America,* 448 Pa.Super. 540, 672 A.2d 786 (1996), was inappropriate.

 *Botsko* and *Tukovits* are decisions in which the Superior Court ruled that the insurers involved therein had failed to comply with the notice requirements of section 1791, and then proceeded to consider whether the insured's waiver of benefits coverage was knowingly and intelligently given pursuant to *Johnson v. Concord Mut. Ins. Co.,* 450 Pa. 614, 300 A.2d 61 (1973).[10] In conducting this analysis, the *Botsko* and *Tukovits*

75 Pa.C.S. § 1791.1.

**10.** Applying this analysis, the Superior Court in *Botsko* concluded that the insurer could not show that the insured had elected to reject underinsured motorist (UIM) coverage, and held that the trial court properly entered summary judgment in favor of the named insured. In *Tukovits,* the Superior Court ruled that, since the insurer could not meet its burden, under *Johnson,* of showing that the insured's rejection of UM/UIM benefits coverage was knowing and intelligent, the trial court properly granted summary judgment in favor of the insured in an amount equal to the policy's bodily injury liability limits. We note that the fact that this court denied allowance of appeal in *Botsko* and

courts adopted the analysis employed by the federal courts anticipating how this court would approach this issue. *See Botsko* and cases cited therein.

In *Johnson*, this court addressed the validity of an insured's waiver of UM benefits coverage under 40 P.S. § 2000,[11] as it existed at the time of the policy in that matter. We stressed in *Johnson* that the insurer has the burden of proving that the insured intelligently and knowingly waived UM coverage.[12] This court concluded in *Johnson* that the insurer's printed form, in itself, was insufficient to constitute a valid rejection by the insured therein. We further held in *Johnson* that, because the testimony did not reveal that the insured had knowingly and affirmatively rejected UM coverage, the insured's signature was insufficient to establish an effective rejection of his statutory right to UM coverage.

The MVFRL was enacted subsequent to *Johnson*. Sections 1731, 1791, and 1791.1 set forth the information which an insurer is required to provide in order that the insured may make a knowing and intelligent decision on whether to waive UM benefits coverage. There was no need for a *Johnson* analysis under the section of the MVFRL at issue here; the question was whether the Appellants have a remedy pursuant

*Tukovits* is no indication of our endorsement of the reasoning used by the Superior Court in those matters. *See Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898 (1996)(an order of this court which dismisses an appeal as improvidently granted has the same effect as if this court had not granted allowance of appeal in the first place; the lower tribunal's opinion and order stand as an opinion of that court and this court's order has no precedential value).

11. Act of August 14, 1963, P.L. 909, 40 P.S. § 2000. While this statute was amended in 1968, it was the original 1963 statute which was involved in *Johnson.*

12. *Johnson* involved an equity action by an insurer seeking to reform an insurance contract where the insured allegedly had waived UM benefits coverage. The statutory provision involved in *Johnson* required all policies to contain uninsured motorist coverage unless the insured rejected such coverage in writing. *See Johnson,* 450 Pa. at 618, 300 A.2d at 63. We stated, "There must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it" to constitute a waiver of a legal right. *Id.* at 620, 300 A.2d at 64.

to the MVFRL for Appellee's failure to comply with section 1791.1.

We agree with the Superior Court's decision, however, but for a different reason. We find persuasive the argument raised by Appellee that under the reasoning employed by the federal district court in *Franks* and *Maksymiuk*, there is no remedy provided by the MVFRL for the Appellants here.

The issue in these federal district court cases was not the same issue which we address herein, but was a related issue. The insured in *Franks* was killed in an automobile accident, and his estate subsequently sought to recover UIM benefits under his policy. The insured in *Franks* had executed waivers of underinsured motorist (UIM) protection in his original policy application, but the insurer failed to comply with the requirements of section 1731(c.1) when it failed to provide the insured with a notice at the time of renewal that there was no UIM coverage under his policy. The federal district court for the Middle District of Pennsylvania concluded in *Franks* that the insurer had unquestionably violated the requirements of section 1731(c.1); in so concluding, the *Franks* court did not discuss the insured's knowledge at the time of renewal, but only that the insurer failed to comply with the mandates of the MVFRL. The federal district court then turned to the remedy, if any, which was provided by the MVFRL to the insured's estate for the insurer's failure to comply with the requirements of section 1731(c.1) at the time of renewal. The *Franks* court concluded that there was no remedy for the insured's estate provided under the MVFRL, and that to provide UIM benefits under the policy would be to create a remedy by improperly reforming the contract.

The federal district court for the Eastern District of Pennsylvania in *Maksymiuk* addressed the question of whether an insured who had signed a valid waiver of UM benefits at the time of application for original coverage, and whose insurer failed to provide notice of the absence of UM coverage in the policy renewal forms in compliance with section 1731(c.1), could receive UM benefits coverage by operation of law because of the insurer's failure to comply with section 1731(c.1).

Relying upon *Franks,* the *Maksymiuk* court concluded that the insured could not recover UM benefits, as the MVFRL provides no remedy for insureds in such a situation.

█ We find the analysis of whether there exists a remedy for an insurer's failure to comply with the requirements of section 1731(c.1) regarding renewal of insurance policies in *Franks* and *Maksymiuk* is equally persuasive as to an insurer's failure to comply with the requirements of section 1791.1 regarding the renewal of such policies. While we recognize that section 1791.1 requires that an insurer must provide specific information to the insured at the time of renewal, the legislature has not provided in the MVFRL any enforcement mechanism regarding this requirement.

Accordingly, we affirm the Superior Court's order affirming grant of summary judgment in favor of Appellee.[13]

Jurisdiction is relinquished.

NEWMAN, J., files a dissenting opinion in which NIGRO, J., joins.

NEWMAN, Justice, dissenting.

Because I disagree with the Majority that an insured has no remedy for an insurer's violation of Section 1791.1 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1791.1, I respectfully dissent.

*Facts and Procedural History*

On November 21, 1992, Rita Salazar was operating her mother's automobile with her permission. Celitia Salazar was a passenger in the car. While stopped at a red light, Rita and Celitia (Appellants) were struck from behind by a hit-and-run driver. Rita's mother, Ruby Brown (Brown), had automobile insurance with the Allstate Insurance Company (Appellee). In her original application for coverage in February of 1991, Brown had rejected Uninsured Motorist (UM) coverage.

---

**13.** This court may affirm an order if it is correct for any reason, regardless of the reason upon which the lower court relied for its decision. *Gwinn v. Kane,* 465 Pa. 269, 348 A.2d 900 (1975).

When she renewed her policy the following year, Brown did not alter her coverage. However, Appellee had failed to provide Brown the renewal notice required by Section 1791.1, concerning coverage options and requirements. The accident occurred in the second policy year.

Appellants, who reside with Brown, brought a civil action in the Court of Common Pleas of Philadelphia County (trial court) against Appellee for UM benefits pursuant to Brown's policy. In their complaint, Appellants argued, inter alia, that they are entitled to UM benefits due to Appellee's failure to comply with the Section 1791.1(a) renewal notice requirement. Appellee filed a motion for summary judgment asserting that Brown had waived UM coverage for resident relatives under her policy.

The trial court granted summary judgment in favor of Appellee, and the Superior Court affirmed, without discussing Section 1791.1. The Majority now affirms the Order of the Superior Court, holding that, although Appellee failed to comply with the Section 1791.1 notice requirement, the MVFRL affords Appellants no remedy.

## Discussion

Section 1791.1 provides:

§ 1791.1. Disclosure of premium charges and tort options

(A) INVOICE.—At the time of application for original coverage *and every renewal thereafter, an insurer must provide to an insured an itemized invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for the insured to purchase the minimum mandated coverages. The invoice must contain the following notice in print of no less than ten-point type:*

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverages or coverages in excess of the

limits required by law are provided only at your request as enhancements to basic coverages.

The insurer shall provide the itemized invoice to the insured in conjunction with the declaration of coverage limits and premiums for the insured's existing coverages.

(B) NOTICE OF TORT OPTIONS.—In addition to the invoice required under subsection (a), an insurer must, at the time of application for original coverage for private passenger motor vehicle insurance and every renewal thereafter, provide to an insured the following notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

A. "LIMITED TORT" OPTION—This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

B. "FULL TORT" OPTION—This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

(C) NOTICE OF PREMIUM DISCOUNTS.—Except where the commissioner has determined that an insurer may omit a discount because the discount is duplicative of other discounts or is specifically reflected in the insurer's experience, at the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured a notice stating that discounts are available for drivers who meet the requirements of sections 1799 (relating to restraint system), 1799.1 (relating to antitheft devices) and 1799.2 (relating to driver improvement course discounts).

(D) ADDITIONAL INFORMATION.—Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two tort options described in subsection (b). These requirements shall include the request for and provision of information by telephone.

75 Pa.C.S. § 1791.1 (emphasis added).

Thus, according to the express terms of the statute, an insurer "must" provide an insured an invoice containing the Section 1791.1 notice at the time of every renewal. Appellee does not dispute that it failed to provide either an invoice or the required notice. Although the Section 1791.1 notice requirement is mandatory, the Majority of this Court reasons that the absence of an express remedy for a Section 1791.1 violation precludes Appellants' recovery of UM benefits. I respectfully disagree.

The Majority relies on the statutory analysis set forth in *Franks v. Allstate Ins. Co.*, 895 F.Supp. 77 (M.D.Pa.1995), and *Maksymiuk v. Maryland Casualty Ins. Co.*, 946 F.Supp. 379 (E.D.Pa.1996), concerning a similar issue arising under Section

1731(c.1) of the MVFRL, 75 Pa.C.S. § 1731(c.1). Both of those cases involved the question of whether an insured who validly rejects UM coverage in the initial application is entitled to such coverage when the insurer fails to provide prominent notice of such waiver in its policy renewal forms as required by Section 1731(c.1). That section provides in part:

§ 1731. Availability, scope and amount of coverage

(A) MANDATORY OFFERING.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured [UIM] motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

(B) UNINSURED MOTORIST COVERAGE.—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

\* \* \*

(C.1) FORM OF WAIVER.—Insurers shall print the rejection forms required by subsections (b) and (c)[relating to underinsured motorist protection] on separate sheets in

prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. *If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists.* Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S. § 1731(c.1)(emphasis added). The *Franks* court noted that Section 1731(c.1) provides a specific remedy for an invalid *rejection form* upon initial application but does not provide a remedy for an improper *renewal notice.* According to the court, "[t]he fact that the Pennsylvania legislature provided a specific remedy to the insured in one instance and, in the same subsection, failed to provide any remedy indicates an intent that no remedy will exist." *Franks,* 895 F.Supp. at 82 (citing *Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979)). The *Maksymiuk* court reached the same conclusion, adopting the *Franks* court's analysis.

While the federal courts' statutory analysis in *Franks* and *Maksymiuk* is enticing in its simplicity, it is flawed. To avoid rendering the renewal notice language mere surplusage, the *Franks* court stated that the renewal notice requirement is a regulatory provision, to be enforced by the Pennsylvania Insurance Department (Department) pursuant to Section 1704 of the MVFRL, 75 Pa.C.S. § 1704(b).[1] That section delegates authority to the Department to administer and enforce provisions of the MVFRL in its jurisdiction and to promulgate appropriate rules and regulations. However, the Depart-

---

**1.** I note that the *Franks* court incorrectly identified the relevant statutory provision as 75 Pa.C.S. § 1705(b).

ment's regulations do not demonstrate that the Department itself considers the renewal notice requirements of the MVFRL as regulatory provisions, with no private remedies. When the agency charged with the administration and enforcement of the MVFRL does not deem a provision a regulatory matter only, it is inappropriate for a court to draw that conclusion. *See Concerned Residents of the Yough, Inc. v. Department of Environmental Resources*, 543 Pa. 241, 670 A.2d 1120 (1995)(agency's interpretation entitled to great weight).

Specifically, the Department has promulgated various regulations to guide an insurer's implementation of Section 1731, the statutory provision at issue in *Franks* and *Maksymiuk. See* 31 Pa.Code. § 68.101 (identifying the required forms); 31 Pa.Code § 68.103 (describing form of § 1731 rejection notices). With respect to the renewal notice, the Department interprets Section 1731(c.1) as mandating an insurer to disclose the rejection of UM/UIM coverage. 31 Pa.Code § 68.103(e). Thus, the Department's regulations reiterate the express statutory renewal notice requirement. However, the Department has promulgated no regulatory scheme for the administration or enforcement of the Section 1731(c.1) renewal notice requirement that would indicate the Department's interpretation of that section as a regulatory provision.

Likewise, the Department's regulations implementing Section 1791.1 provide that Section 1791.1(a) "requires a new form giving an itemized comparison of minimum motor vehicle coverage levels with the insured's current coverages. The invoice shall contain the statutory language." 31 Pa.Code § 68.106(a). Thus, consistent with the express statutory language, the Department interprets Section 1791.1 as mandating an insurer to provide an insured the statutory notice upon renewal. The Department has not, however, promulgated any regulatory mechanism for the administrative enforcement of violations of Section 1791.1. *See* 31 Pa.Code § 68.101 (identifying forms), and § 68.604 (detailing § 1791.1 notice requirements).[2] When the Department considers the Section

2. Section 68.604 specifically provides:

1791.1(a) renewal notice mandatory, but has promulgated no administrative procedures for its enforcement, I cannot agree with the Majority's reliance on *Franks* and *Maksymiuk* for the proposition that Section 1791.1 is a regulatory provision with no private remedy.

Consequently, I am persuaded that to construe the statute as the Majority does renders the Section 1791.1 renewal notice provision mere surplusage, and yields an absurd result. Instead, pursuant to the rules of statutory construction, I conclude that Appellants are entitled to UM benefits.

The goal of statutory construction is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S. § 1921(a). In ascertaining the legislative intent, we may presume that the General Assembly did not intend an absurd or unreasonable result, 1 Pa.C.S. § 1922(1), and intended the entire statute to be effective, 1 Pa.C.S. § 1922(2). Accordingly, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

The MVFRL does not contain a statement of findings and purpose. Prior to the 1990 amendments that rendered UM and UIM coverages optional, this Court stated that the legislature enacted the MVFRL to reduce the rising cost of automobile insurance and the resultant increase in uninsured motorists. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994). Since the 1990 amendments, the Superior Court has held that one of the objects of the MVFRL is to afford the injured claimant the broadest possible coverage. *Motorists Ins. Cos. v. Emig*, 444 Pa.Super. 524, 664 A.2d 559 (1995), *alloc. denied*, 546 Pa. 665, 685 A.2d 545 (1996). In this way,

Under 75 Pa.C.S. § 1791.1(a) (relating to disclosure of premium charges and tort options), an insurer is required to provide an itemized invoice to an insured which displays the minimum limits and coverages required for the limited tort option. In implementing 75 Pa.C.S. § 1791.1(b), an insurer should include up-to-date premium comparisons for the full and limited tort options in its notifications to customers. The Insurance Department encourages insurers to mail selection forms to those customers who did not complete forms during the initial implementation of the act of February 7, 1990 (P.L. 11, No. 6). 31 Pa.Code § 68.604.

the MVFRL is to be liberally construed. 1 Pa.C.S. § 1928(c); *Motorists.* With these principles in mind, I turn to the statutory provisions at issue here.

By its express terms, the MVFRL mandates compliance with the following procedures to establish a waiver of UM coverage:

1. An insurer must offer an insured uninsured motorist coverage, 75 Pa.C.S. § 1731(a), and inform the insured that he/she may reject such coverage by signing a "Rejection of Uninsured Motorist Protection" waiver, 75 Pa.C.S. § 1731(b).

2. On policy renewals in which the insured has rejected UM protection, the insurer must provide a policy renewal containing notice in prominent type that the policy does not provide UM protection, 75 Pa.C.S. § 1731(c.1).

3. At the time of application for original coverage, the insurer must advise the insured of the available policy benefits and limits, presumptively established through the provision to the insured of the "Important Notice," 75 Pa.C.S. § 1791.[3]

3. Section 1791 specifically provides:
 § 1791. Notice of available benefits and limits
 It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:
 IMPORTANT NOTICE
 Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:
 (1) Medical benefits, up to at least $100,000.
 (1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.
 (2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.
 (3) Accidental death benefits, up to at least $25,000.
 (4) Funeral benefits, $2,500.
 (5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or

4. At the time of application for original coverage and every subsequent renewal, an insurer must provide to an insured an itemized invoice displaying premium charges and tort options, and the specific Section 1791.1 notice, 75 Pa.C.S. § 1791.1.

As the Majority notes, Section 1791.1 is in para materia with Sections 1731 and 1791. 1 Pa.C.S. § 1932. Construing these sections together, one discerns a comprehensive statutory scheme to ensure that an insurer will advise the insured of all the benefits, options, minimum legal coverage, and costs associated with each choice under the MVFRL. The legislature has, therefore, protected the consumer by providing him or her with sufficient information to intelligently and knowingly elect options or reject coverage upon the initial application *and* upon renewal. Requiring insurers to fully inform consumers is consistent with the legislature's intent to provide the broadest possible coverage while reducing the rising cost of insurance. *See Pennsylvania Financial Responsibility As-*

benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident. Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company. If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

75 Pa.C.S. § 1791.

*signed Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84 (1995) (MVFRL seeks, in part, to ensure owners of registered vehicles purchase adequate insurance); *see also Donnelly v. Bauer,* 453 Pa.Super. 396, 413, 683 A.2d 1242, 1250 (1996) (Del Sole, J., dissenting) ("The goal of providing for an informed consumer is not in conflict with the equally important goal of making automobile insurance more affordable and more available."), *alloc. granted,* 548 Pa. 627, 693 A.2d 967 (1997).

Accordingly, the legislature has provided that an insurer's noncompliance with the Section 1731(c.1) rejection form for UM protection entitles the insured to UM coverage equal to the bodily injury liability limits of the insured's policy. 75 Pa.C.S. § 1731(c.1); *Lucas v. Progressive Casualty Ins. Co.,* 451 Pa.Super. 492, 680 A.2d 873 (1996), *alloc. denied,* 548 Pa. 619, 693 A.2d 589 (1997). Additionally, noncompliance with the Section 1791 "Important Notice" provision eviscerates any presumption that the insured has been advised of the benefits and limits available under the MVFRL, and results in coverage in the amount of bodily injury liability unless the insured otherwise knowingly and affirmatively waived such coverage. 75 Pa.C.S. § 1791; *Botsko v. Donegal Mutual Ins. Co.,* 423 Pa.Super. 41, 620 A.2d 30, *alloc. denied,* 536 Pa. 624, 637 A.2d 284 (1993) (citing *Johnson v. Concord Mutual Ins. Co.,* 450 Pa. 614, 300 A.2d 61 (1973)).

In the context of the entire MVFRL framework, it is, therefore, absurd to construe an insurer's failure to provide the notice mandated by Section 1791.1 upon policy renewal as innocuous. To give effect to the Section 1791.1 notice requirement, I would hold that due to Appellee's failure to provide the required invoice and notice, Appellee has failed to establish a valid waiver of UM benefits in Brown's second policy year. Accordingly, I believe that Appellants are entitled to UM benefits in the amount of the bodily injury liability limits of Brown's policy.

Moreover, my decision is further supported by analogy to case law considering whether a private cause of action for damages is implicit in a statute not expressly providing one. The United States Supreme Court set forth the standard for

determining when a private cause of action may be implied from a federal statute in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

1. Is the plaintiff one of the class for whose special benefit the statute was enacted?

2. Is there any indication of legislative intent, either explicit or implicit, to create such a remedy or to deny one?

3. Is implication of such a remedy consistent with the underlying purposes of the legislative scheme?

4. Is the cause of action one traditionally relegated to state law?

*Id.* at 78, 95 S.Ct. at 2087. Applying the relevant factors of the *Cort* test to this case, I believe it is appropriate to imply a remedy for Appellee's violation of the Section 1791.1 renewal notice requirement.[4] Because the MVFRL is designed, in part, to protect consumers and provide the broadest possible coverage to injured parties, Appellants are among the particular group for whose benefit the statute was enacted. In the context of the entire MVFRL scheme, an implied private remedy for an insurer's violation of Section 1791.1 is consistent with the spirit and purpose of the statute, particularly in the absence of any legislative or regulatory enforcement procedures.

Accordingly, I would reverse the Superior Court's affirmance of the trial court's grant of summary judgment in favor of Appellee and remand for further proceedings.

NIGRO, J., joins in this dissenting opinion.

---

**4.** The last factor does not apply to a state statute. *See, e.g., In re: Resolution of State Comm'n of Investigation,* 108 N.J. 35, 527 A.2d 851 (1987).