Clyde **LEYMEISTER**, Plaintiff,

v.

**STATE FARM MUTUAL AUTO-MOBILE INSURANCE CO.**
Defendant.

No. CIV.A.3:99–CV–1249.

United States District Court,
M.D. Pennsylvania.

May 26, 2000.

Edward M. Brennan, Pottsville, Harry Rubright, Schuylkill Haven, CT, for Clyde Leymeister, plaintiff.

Teresa Ficken Sachs, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for State Farm Insurance Co., defendant.

## *MEMORANDUM*

CAPUTO, District Judge.

This is an insurance coverage dispute. Jurisdiction is founded upon diversity of citizenship. Presently before the Court are plaintiff's and defendant's cross-motions for summary judgment. For the reasons set forth below, defendant's motion will be granted and plaintiff's motion will be denied.

---

## I BACKGROUND

This action was initiated by the filing of a complaint in the Court of Common Pleas of Schuylkill County on or about June 16, 1999. On July 15, 1999, defendant filed a petition for removal to this Court. On April 24, 2000, defendant and plaintiff filed cross-motions for summary judgment.

The parties have stipulated to each of the facts presented in this section. (*See* Stipulation of Facts, doc. 13, Ex. A). Plaintiff, Clyde Leymeister and his wife Leisa Leymeister, are citizens of Pennsylvania. Defendant, State Farm Mutual Automobile Insurance Co., is an Illinois corporation, authorized to write and issue insurance policies in the Commonwealth of Pennsylvania.

On August 3, 1997, plaintiff was injured in a motor vehicle action which took place in Schuylkill County, Pennsylvania. At the time of the accident, plaintiff was occupying a 1987 Ford Ranger insured under a policy of insurance issued by State Farm, policy number 711 9443–E20–38 ("the State Farm policy"). The State Farm policy was issued May 20, 1994, and was reissued, and renewal premiums paid, every six months thereafter up to and including May 20, 1997. Clyde and Leisa Leymeister were the named insureds on the policy. The other vehicle involved in the accident tendered its applicable limits of liability coverage to the plaintiff. Mr. Leymeister seeks underinsured motorist benefits under the State Farm policy.

The State Farm policy covered two vehicles and provided stacking underinsured motorist coverage with limits of $25,000 per person, $50,000 per accident (hereinafter "25/50" coverage). State Farm policy number 711 9443–E20–38, issued to Mr. Leymeister on May 20, 1994, was a reissuance of a prior policy which had lapsed. Leisa Leymeister went to the agent's office on May 20, 1994, requested that the policy be reissued, and tendered a pay-

ment. The policy was issued in the same amounts which had been in effect under the prior policy. Leisa Leymeister signed her name and her husband's name to all the forms.

On or about March 31, 1995, Mrs. Leymeister requested changes to the Leymeisters' State farm policies as follows: a) a 1991 Ford Aerostar van was added; b) policy number 597 4603–C08–38L issued to Leisa Leymeister and covering a 1985 Chevrolet Cavalier was combined into the instant policy (number 711 9443–E20–38) to form a three-car policy; c) Leisa Leymeister was added as a named insured to policy number 711 9443 E20–38.

On or about December 6, 1995, Mrs. Leymeister requested a change to the State Farm policy to effect its cancellation on November 12, 1995. On or about December 12, 1995, Mrs. Leymeister requested the following changes to the State Farm policy: a) the limits of liability coverage were increased from 25/50 per occurrence to $100,000 per person/$300,000 per occurrence ("100/300"); b) the limits of uninsured motorist coverage and underinsured motorist coverage were increased from $15,000 per person/$30,000 per occurrence ("15/30") to 25/50;[1] c) wage loss, medical payment and property damage coverages were also increased; d) coverages for rental and travel expenses, and death, dismemberment and loss of sight were added. Leisa Leymeister signed her name and her husband Clyde Leymeister's name to the forms.

On or about February 1, 1996, Leisa Leymeister requested the following additional changes to the State Farm policy: a) the Chevrolet Cavalier was requested to be removed from the policy; b) a 1987 Ford Ranger was added. On the same date, Leisa Leymeister signed her name and her husband's name to the forms.

---

1. Plaintiff notes that $15,000 per person and $30,000 per accident was the mandatory minimum UM and UIM coverage between 1984 and 1990. (*See* Pl.'s Br. in Supp. of Mot. for Summ. Judg., doc. 17 at 6).

Whenever a change was made on the policy, a new declarations page setting forth the types and amounts of coverage on the policy was mailed to the insureds. Renewal notices setting forth the types and amounts of coverages, and the charges for those coverages, were mailed to the insureds every six months, including May 1996, November 1996 and May 1997.

## II DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.1994), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Here, the parties have stipulated to the facts. Given the absence of genuine issues of material fact, I must determine whether plaintiff or defendant is entitled to judgment as a matter of law.

### A. Analysis

Plaintiff argues that Mrs. Leymeister's "waive down" of underinsured motorist

("UIM") coverage was not valid because Section 1731, "Availability, scope and amount of coverage" and Section 1734, "Request for lower limits of coverage" of the Motor Vehicle Financial Responsibility Law ("MVFRL") were not complied with. Specifically, plaintiff contends that the forms signed by Leisa Leymeister to increase the uninsured motorist coverage ("UM") and UIM coverage from 15/30 to 25/50 did not comply with Section 1731 and that Mrs. Leymeister's "waive down"[2] of coverage was therefore ineffective. Section 1731(c.1) reads as follows:

> **(c.1) Form of waiver.**-Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa. Cons.Stat. Ann. § 1731(c.1). Plaintiff argues that Mrs. Leymeister's "waive down" of coverage was ineffective because the provisions for UM and UIM coverage

---

**2.** Although the Leymeisters increased their coverage, the forms which they used have been referred to by counsel as "waive down" forms because they entail a waiver of higher coverage: "Coverages ... are available with limits up to the Bodily Injury Liability limits.

Coverage ... will be written at the Bodily Injury Liability limits unless a named insured selects lower limits or rejects the coverage entirely." (Form, Doc. 17, Ex. B). The Leymeisters selected lower limits which they increased from 15/30 to 25/50.

were on the same sheet of paper, and because the forms were signed by Mrs. Leymeister, not Clyde Leymeister, who was the first named insured. Therefore, plaintiff contends that he is entitled to the default UIM coverage, $100,000 per person/$300,000 per accident, which if stacked would yield a total of $200,000/$600,000 coverage for two vehicles. Defendant disputes that the forms signed by Mrs. Leymeister are void and contends that plaintiff is entitled only to the 25/50 coverage (stacked: $50,000) for which Mrs. Leymeister signed.

I agree with the defendant that plaintiff is entitled only to 25/50 coverage. Plaintiff's argument rests upon the assumption that Section 1731(c.1), which governs waiver of uninsured and underinsured motorist coverage, i.e. rejection of all such insurance coverage, is also applicable to "waive downs," i.e. request for lower levels of coverage. Plaintiff advances no authority which directly or persuasively supports this proposition. Section 1731(c.1) imposes something akin to strict liability on insurers who do not follow the legislature's guidelines on the proper format for rejection forms: "If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." It is apparent that this strong corrective is designed to give the insurer the proper incentive to follow the legislature's prescription for avoiding uninformed choice on the part of purchasers of insurance. It does not necessarily follow, however, that because the

legislature has decided such a strict measure is needed to protect consumers from unintelligently waiving all of their UM and UIM coverage, that the same measure must be applied in the less dramatically risky area of "waiver down." The present case, involving an *increase* in coverage from the former requisite minimum coverage seems particularly unsuited to an enlargement upon the legislature's plain language.[3]

Moreover, Section 1734, "Request for lower limits of coverage" provides that "[a] named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 Pa. Cons.Stat. Ann. § 1734. First, all that is necessary under the statute is action by a "named insured." *Id.* Further, Section 1734 requires "a request in writing" to obtain underinsured motorist coverage "less than the limits of liability for bodily injury." *Id.* The language of Section 1734 is clear on its face; all that is required to request lower limits of coverage is a writing requesting the same from a named insured. There is nothing to construe. *See Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 231 (3d Cir.1992) (Interpreting Section 1734, the Court of Appeals remarked: "Our task is made simple by virtue of the venerable plain meaning rule of statutory construction: 'If the language be clear it is conclusive. There can be no construction where there is nothing to construe.'")

3. Recent decisions by the Supreme Court of Pennsylvania have suggested an unwillingness on the part of the State's high court to entertain statutory interpretations that depart from the letter of the text, even where the plaintiff is left without redress for an injury under the statute. In *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 702 A.2d 1038, 1044 (1997), the supreme court held that the insurer's failure to provide Section 1791.1 notices upon policy renewals did not permit an insured who had waived uninsured motorist coverage to have the policy reformed to add that coverage. The court reasoned that Section 1791.1 did

not provide that remedy for failure to comply with its provisions, even where the carrier had failed to provide the required notices. *Id.* Similarly, in *Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d 447, 453–54 (1998), the supreme court held that insurers' failure to provide notice of cost comparisons between full and limited tort options as required by Section 1705 of the MVFRL did not entitle the claimants to "full tort" status. The court agreed that the notices should have been given, but held, citing *Salazar*, that the MVFRL did not provide a remedy for failing to do so. *Id.*

In addition, there is no suggestion in the MVFRL that a request for lower limits of coverage is subject to the same requirements as a rejection of coverage. Indeed, had the legislature so intended, it could easily have done so. Instead, it passed a separate provision which deals with requesting lower limits, to wit Section 1734, and specifically omitted any reference to the kind of requirements it mandated for a complete rejection.

Therefore, to the extent this case is considered one of "waiver down,"[4] it is governed by Section 1734 which has been satisfied and the plaintiffs have contracted for coverage in the amount of $25,000 per person, $50,000 per accident. The fact that the forms were not printed on separate sheets of paper and that they were not signed by Clyde Leymeister, the first named insured, is of no consequence because Section 1731 is not applicable.

Plaintiff also argues that the insureds had no idea what type of coverage they were purchasing or what underinsured motorist coverage is. Because I find that defendant has complied with the requirements of Section 1734, I must apply the conclusive presumption of 75 Pa. Cons. Stat. Ann. § 1791: "It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required ...." Defendant has provided ample evidence that such notice was provided. (*See* Doc. 13, Exs. 10, 4, 2, 3, 7). Accordingly, the Leymeisters are estopped from arguing that their selection was ill-informed.

## III CONCLUSION

In conclusion, defendant's summary judgment motion will be granted and plaintiff's summary judgment motion will be denied. The Court will declare that the State Farm policy provides underinsured motorist coverage with limits of $25,000 per person, $50,000 per accident.

An appropriate Order follows.

### *ORDER*

**NOW,** this 26th day of May, 2000, it is hereby ORDERED that:

1. Defendant's Motion for Summary Judgment (doc. 13) is GRANTED; and

2. Plaintiff's Motion for Summary Judgment (doc. 16) is DENIED.

3. Further, it is DECLARED that the State Farm policy provides underinsured motorist coverage with limits of $25,000 per person, $50,000 per accident.

4. The Clerk of the Court is directed to mark this case CLOSED.