ESTATE OF John B. FRANKS, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. 4:CV–94–1228.

United States District Court, M.D. Pennsylvania.

July 17, 1995.

---

Charles M. Watkins, Reading, for plaintiff.

James G. Nealon, Caldwell & Kearns, Harrisburg, for defendant.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On July 12, 1994, plaintiff Estate of John B. Franks initiated this action with the filing of a complaint in the Court of Common Pleas of Tioga County, Pennsylvania. The case was removed to this court by defendant Allstate Insurance Company with the filing of a notice of removal on August 2, 1994. Plaintiff alleges that it is due sums under a contract of insurance issued by defendant in June of 1990. The claim is based upon the death of John B. Franks in an automobile accident which occurred on March 10, 1994.

Before the court is defendant's motion for summary judgment. (Hereinafter, John B. Franks will be referred to as "Franks"; the Estate of John B. Franks will be referred to as "plaintiff.")

### DISCUSSION:

### I. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323, 325, 106 S.Ct. at 2554.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

## II. STATEMENT OF FACTS

### A. Undisputed Facts

1. For the period from December 29, 1989, to June 29, 1990, Franks was insured under a Personal Auto Policy issued by Aetna Casualty and Surety Company. The Aetna policy provided liability limits of $500,000.00 and uninsured motorist limits of $35,000.00. The Aetna policy provided underinsured motorist benefits as part of its uninsured motorist coverage.

2. Franks obtained the Aetna policy through the Saunders Insurance Agency of Mansfield, Pennsylvania.

3. In 1990, Gannon Associates Insurance Company purchased Saunders.

4. Gannon was not authorized to write Aetna policies. As a result, Gannon contacted customers of Saunders and offered them the opportunity to obtain coverage through defendant or to find a new agent.

5. In June of 1990, Franks made arrangements to obtain an automobile policy from defendant. The Aetna Policy was "rolled" into an Allstate policy.

6. Effective June 29, 1990, defendant issued to Franks an automobile insurance policy, Policy # 0 08 096492. The Allstate policy initially provided bodily injury liability limits of $250,000.00 for each person and $500,000.00 for each occurrence, and uninsured/underinsured limits of $15,000.00 for each person and $30,000.00 for each accident.

7. In connection with obtaining the Allstate policy, Franks signed an "Important Notice."

8. Shortly after obtaining his Allstate Policy, Franks requested that certain changes be made. Effective June 29, 1990, Franks requested that the rental reimbursement coverage and the extraordinary medical coverage be deleted.

9. For the first renewal period, December 29, 1990, to June 29, 1991, the Allstate policy again had bodily injury liability limits of $250,000.00/$500,000.00. However, the uninsured/underinsured motorist limits had been increased from $15,000.00/$30,000.00 to $250,000.00/$500,000.00.

10. On July 1, 1991, Franks executed documents which dropped collision and comprehensive coverage on a 1987 Dodge.

11. On July 1, 1991, Franks signed two forms, a "Multiple Request Form" and an underinsured motorist rejection form. The underinsured motorist rejection form contained two parts, "Rejection of Underinsured

Motorist Protection" and "Rejection of Stacked Underinsured Motorist Protection."

12. Allstate obtained the approval of the Pennsylvania Insurance Department to include the "Rejection of Underinsured Motorist Protection" and "Rejection of Stacked Underinsured Motorist Coverage" on a single sheet of paper.

13. On December 10, 1991, a quote was prepared by Gannon for Franks which included, *inter alia*, underinsured motorist coverage. Underinsured motorist coverage was not included on Franks' policy in December of 1991.

14. Effective December 11, 1991, Franks made certain changes to his policy to add his son as a driver to the policy, lower his medical coverage to $500,000.00, drop income loss coverage, drop funeral expense coverage and drop the collision/comprehensive coverage for a 1987 Mercury Marquis. His reasons for doing so and any discussion with Gannon related to making these changes are disputed.

15. On June 21, 1993, Franks requested that Allstate increase his bodily injury limits to $500,000.00/$1,000,000.00 and rejected uninsured motorist coverage. In connection with this request, Franks signed two forms, a "Multiple Request Form" and a rejection of uninsured motorist coverage form.

16. On March 10, 1994, Franks was involved in a motor vehicle accident. As a result of the accident, Franks died.

17. Subsequent to the accident, plaintiff made a claim against the Estate of Peter R. Mogush. At the time of the accident, Mogush was insured under a policy of insurance issued by the Erie Insurance Company with liability limits of $100,000.00. Erie has offered the policy limits to settle all claims of plaintiff.

18. Thereafter, plaintiff made a claim for underinsured motorist benefits to defendant.

### B. Disputed Facts

The above recitation of undisputed facts reflects the facts admitted by plaintiff in its response to defendant's statement of undisputed material facts. The twelfth fact recit-

ed by defendant, Statement of Undisputed Facts at 3 ¶ 12, has been omitted as a conclusion of law. Plaintiff admits in full most of the facts recited by defendant, specifically ¶¶ 1–9, 15–19.

Plaintiff also provides reasons for which a finder of fact may reject the testimony of Donna Davey. Plaintiff's Brief *Contra* the Motion for Summary Judgment at 9–10. For purposes of this memorandum and order, the testimony concerning Franks' reasons for visiting Gannon and discussions related to the Allstate policy will be considered disputed, as reflected in ¶¶ 10–11, 14, above (corresponding to ¶¶ 10–11, 15 of defendant's Statement of Undisputed Facts).

Defendant asserts that it obtained the approval of the Pennsylvania Insurance Department for the inclusion of the "Rejection of Underinsured Motorist Protection" and "Rejection of Stacked Underinsured Motorist Coverage" on one form. Defendant's Statement of Undisputed Facts at 3 ¶ 13. Plaintiff disputes this assertion, but cites no reason to discount the affidavit of Richard S. Cibula. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at 2 ¶ 13. The factual representation by plaintiff therefore remains in the Statement of Facts recited above. Sec. II.A. ¶ 12.

### III. REJECTION OF UNDERINSURED MOTORIST COVERAGE

The first issue raised by the parties is whether Franks validly rejected the underinsured motorist coverage when he signed the forms presented on July 1, 1991. One form he signed contained both the "Rejection of Underinsured Motorist Protection" and the "Rejection of Stacked Underinsured Motorist Protection." According, to plaintiff, the inclusion of both of the rejection forms on one sheet of paper makes void the "Rejection of Underinsured Motorist Protection".

The law governing rejection of the insurance coverage at issue is set forth in the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.Cons. Stat.Ann. § 1701 et seq. The specific form required under Pennsylvania law to reject underinsured motorist protection reads:

## REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

.............................
Signature of First Named Insured
.............................
Date

75 Pa.Cons.Stat.Ann. § 1731(c). *See also* Exhibit 8 to Deposition of Donna Davey (appended as Exhibit 1 to Defendant's Statement of Undisputed Facts). A similar form was executed as required for waiving stacked limits of underinsured motorist coverage. *See* 75 Pa.Cons.Stat.Ann. § 1738(d)(2); Exhibit 8 to Deposition of Donna Davey.

The problem arises from the fact that these two waivers were printed on the same form. Plaintiff argues that this is not permitted:

> Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location.... Any rejection form that does not specifically comply with this section is void.

75 Pa.Cons.Stat.Ann. § 1731(c.1). Subsection (b) sets forth the form for rejection of uninsured motorist benefits. According to plaintiff, the plain meaning of this section is that each form set forth in § 1731 must be printed on its own sheet of paper or it is void. We disagree.

■ Rather than reading that each waiver form must be printed on its own page, the language of § 1731(c.1) is that the forms for uninsured motorist protection and underinsured motorist protection must be printed "on separate sheets." This provision can be read to mean that these two forms cannot be printed on the same page, but without requiring that they be separate from other provisions. In fact, the language following "separate sheets" supports this reading: there is no reason to print a waiver "in prominent type and location" if the waiver is the only form printed on a page. Plaintiff's interpretation of this provision would render the "in prominent type and location" language meaningless. *But see* 1 Pa.Cons.Stat. Ann. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all of its provisions").

■ A reading of the entire sentence, then, leads to the conclusion that the forms set forth in § 1731(b) and (c) may not be printed on the same page, but are not required to be printed on their own page. We also note that "Rejection of Underinsured Motorist Protection" is at the top of the page on which it is printed, the caption is in bold print, and it is set forth in easily legible print, in compliance with the "prominent type and location" language of § 1731(c.1). On July 1, 1991, Franks executed valid waivers of underinsured motorist protection and stacked underinsured motorist protection.

### IV. RENEWAL NOTICES

Plaintiff also argues that the waiver of underinsured motorist benefits is invalid because defendant did not comply with the requirements related to renewal notices. The relevant provision reads:

> ... On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists....

Sec. 1731(c.1).

The policy renewal in effect at the time of Franks' accident is appended to the complaint as Exhibit D. It provides a list of coverages under the policy, but does not contain notice that there is no underinsured motorist coverage. It is beyond dispute that defendant violated § 1731(c.1) in this respect.

### V. REMEDY

■ Having determined that there is a violation of § 1731(c.1), the next question becomes the remedy available to plaintiff. Defendant argues that plaintiff is not entitled to have the policy of insurance reformed,

while plaintiff argues that the language of the statute authorizes coverage in the amount of bodily injury liability limits under the policy. We agree with defendant.

In this regard, it is necessary to view § 1731(c.1) in its entirety:

Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.Cons.Stat.Ann. § 1731(c.1).

This subsection provides that, when the rejection form does not comply with § 1731, it is void, and the insured is deemed to have uninsured or underinsured coverage in the amount of the bodily injury limits. The subsection also states that the insurer is to remind the insured of the rejection in a particular form. However, nowhere does the subsection provide that failure to print the renewal notice as described renders the rejection void, nor does it state that when the insurer fails to print the renewal notice as described, the insured is deemed to have uninsured or underinsured motorist coverage in any amount.

In other words, the subsection provides a specific remedy for an invalid rejection form, but does not provide for a remedy for an improper renewal notice. The fact that the Pennsylvania legislature provided a specific remedy to the insured in one instance and, in the same subsection, failed to provide any remedy indicates an intent that no such remedy will exist. *Cf. Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392, 395 (1979) (lack of proviso language in one statute which appeared in similar statute indicated different intent on part of legislature to include separate elements in offenses; quoting *Richerson v. Jones*, 551 F.2d 918, 928 (3d Cir. 1977)); *Commonwealth v. Taylor*, 424 Pa.Super. 181, 622 A.2d 329, 333 n. 4 (1993) (more stringent requirements for non-consensual surveillance than for consensual monitoring indicated different legislative intent for standard applied to "suspected criminal activities"); *Commonwealth v. Reeb*, 406 Pa.Super. 28, 593 A.2d 853, 855 (1991) ("Where certain things are specifically designated in a statute, all omissions should be understood as exclusions."; citation omitted), *allocatur denied*, 530 Pa. 665, 610 A.2d 45 (1992).

■ Plaintiff argues that, if it has no remedy, the statutory language concerning the renewal notices is mere surplusage. Actually, under 75 Pa.Cons.Stat.Ann. § 1705(b), authority is delegated to the Pennsylvania Insurance Department for administration and enforcement of the MVFRL. The requirement with respect to renewal notices therefore constitutes a regulatory provision, to be enforced by the Insurance Department, and does not provide a remedy to a private litigant. Moreover, it is not the place of the courts to create a remedy when no remedy is provided within a statutory scheme, including a remedy by analogy to another provision of the statute.

## VI. CONCLUSION

The forms signed by Franks on July 1, 1991, comply with 75 Pa.Cons.Stat.Ann. § 1731(c.1), and therefore constitute a valid rejection of underinsured motorist protection under Pennsylvania law. Defendant did not comply with the renewal provision of the statute, which requires notice in prominent type that underinsured motorist coverage has been rejected. However, no remedy is set forth in the statute, and plaintiff is not entitled to reformation of the contract to

provide coverage under Franks' policy of insurance.

Defendant's motion for summary judgment will be granted. An appropriate order shall issue.