## Calabrese v. Colonial Insurance Co.

C.P. of Lackawanna County, no. 99-CV-5961.

*James J. O'Connor,* for plaintiff.
*Scott J. Tredwell,* for defendant.

NEALON, *J.,* March 3, 2000—Plaintiff, David James Calabrese, has filed a motion to compel his automobile insurer, defendant, Colonial Insurance Company of California t/d/b/a Colonial Insurance Company of Wisconsin, a member of the Nationwide Insurance Enterprise, to submit to underinsured motorist arbitration and, in response, Colonial has requested a declaratory judgment that Calabrese affirmatively rejected UIM coverage under 75 Pa.C.S. §1731(c.1). Since Colonial placed the form

for rejection of UIM protection on the same page as the waiver election for stacked UIM coverage limits, Colonial did not secure a valid rejection of UIM protection under section 1731(c.1) and Calabrese is, therefore, entitled to UIM coverage such that his motion to compel arbitration will be granted.

## I. FACTUAL BACKGROUND

On April 10, 1997, Calabrese purchased an automobile insurance policy from Colonial which insured Calabrese and afforded coverage for his 1988 Chevrolet Cavalier for the period from April 10, 1997 through October 10, 1997. The policy in question provided Calabrese with certain coverages including liability insurance limits of $15,000 per person and $30,000/accident. At the time that he obtained his Colonial policy, Calabrese executed the following single paged document which ostensibly contained written rejections of UIM coverage and stacked UIM limits:

"Pennsylvania Underinsured Motorist Coverage Option Forms

"Rejection Of Underinsured Motorist Protection UIM1

"By signing this waiver, I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

"/s/David J. Calabrese

"(Signature of named insured)

"Policy number 377089673 Date 4-10-97

"Agent /s/D.J. Granahan County Lacka

---

"Rejection Of Stacked Underinsured Coverage Limits UIM2

"By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

---

"(Signature of named insured)
"Policy number 377089673 Date_____
"Agent_____ County_____"

(See motion to compel underinsured motorist arbitration, exhibit A.)

Shortly thereafter, Calabrese was issued a declarations page, financial responsibility identification card, and 28-page "Pennsylvania automobile policy" by Colonial. Although the declarations page indicates that Calabrese had rejected UM/UIM coverage, it also contains a "C1430" notation under the heading for "endorsements." (See plaintiff's brief, exhibit B, p. 2.) The policy that was delivered to Calabrese by Colonial includes general provisions pertaining to Calabrese's coverages which are amended by a subsequent section of the policy entitled "Pennsylvania amendatory endorsement (C1430)" that inserts additional language governing the limits of UIM

coverage, the authority of arbitrators and the identification of those issues which must be "decided by a court of law."[1] (*Id.,* pp. 21-22.) The supplemental UIM provisions set forth in the C1430 endorsement section expressly state:

"Determination whether an *insured person* is legally entitled to recover damages or the amount of damages shall be made by agreement between the *insured person* and *us.* If no agreement is reached, the decision will be made by arbitration. However, the following questions will be decided by a court of law:

"(a) questions between the injured party and *us* regarding whether the injured party is an *insured person* under this coverage; or

"(b) the limits of such coverage; or

"(c) questions regarding:

"(i) stacking;

"(ii) waivers;

"(iii) residency; and

"(iv) statute of limitations." (*Id.,* p. 22.)

On August 19, 1997, Calabrese was involved in an automobile accident with William James, as a result of which James' liability insurer, Nationwide Insurance Company agreed to settle Calabrese's third party claim by tendering $49,000 of its $50,000 policy limits. Before settling his tort claim with the liability insurance

---

1. The Colonial policy provides that UIM "[a]rbitration shall be conducted in accordance with the provisions of the Pennsylvania Arbitration Act of 1927." (*Id.,* p. 11.) Although the 1927 Act, 5 P.S. §161 et seq., was repealed and replaced by the Pennsylvania Uniform Arbitration Act of 1980, 42 Pa.C.S. §7301 et seq., the 1927 Act may still apply if the policy clearly states that arbitration is to be conducted under the 1927 Act. *MGA Insurance Co. v. Bakos,* 699 A.2d 751, 753 n.4 (Pa. Super. 1997); *Overfield v. Ohio Casualty Insurance Co.,* 39 D.&C.4th 548, 557 (Lacka. Cty. 1998).

carrier, Calabrese secured Colonial's written consent to settle with Nationwide on November 18, 1999. (See plaintiff's brief, exhibit D.) Calabrese then demanded UIM benefits from Colonial and presumably agreed to provide Colonial with a credit or offset for the full amount of James' liability limits in accordance with *Boyle v. Erie Insurance Co.,* 441 Pa. Super. 103, 656 A.2d 941 (1995), *alloc. denied,* 542 Pa. 655, 668 A.2d 1120 (1995). See *e.g., Overfield v. Ohio Casualty Insurance Co.,* 39 D.&C.4th 548, 559-69 (Lacka. Cty. 1998).

After Colonial declined to honor Calabrese's request for UIM benefits, Calabrese filed a motion to compel UIM arbitration on November 29, 1999, and obtained a rule to show cause which was made returnable by December 20, 1999. On that date, Colonial submitted its answer to Calabrese's motion and contemporaneously filed a counterclaim seeking a declaratory judgment that Calabrese had affirmatively waived his right to UIM protection from Colonial. An evidentiary hearing was conducted on February 29, 2000, at the conclusion of which this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Scope of Review*

Calabrese requests an order compelling the parties to submit to UIM arbitration and directing Colonial to select its designated arbitrator within a certain time period. When one party to an agreement seeks to compel another to proceed with arbitration, judicial inquiry is limited to determining (1) if a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitra-

tion provision. *Midomo Co. Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 186 (Pa. Super. 1999); *Moses Taylor Hospital v. GSGSB,* no. 96-CV-608, Nealon, J. at p. 5 (Lacka. Cty. January 21, 2000). Agreements to arbitrate are governed by contract law. *Emlenton Area Municipal Authority v. Miles,* 378 Pa. Super. 303, 307, 548 A.2d 623, 625 (1988), *alloc. denied,* 522 Pa. 613, 563 A.2d 498 (1989), and if a valid arbitration agreement exists between the parties and the claim at issue is within the scope of the agreement, the controversy must be submitted to arbitration. *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 284, 687 A.2d 1167, 1171 (1997); *Moses Taylor Hospital, supra* at p. 6.

In the absence of any policy language limiting their authority, arbitrators have traditionally enjoyed considerable power in deciding UM/UIM issues. *Brennan v. General Accident Fire and Life Assurance Corporation Ltd.,* 524 Pa. 542, 549, 574 A.2d 580, 583 (1990) ("[t]here is no limit to the jurisdiction of the arbitrators over what issues may be submitted and in fact the policy declares that all disputes between the insurance company and the insured will be arbitrated"); *Hoerst v. Prudential Property and Casualty Insurance Co.,* 425 Pa. Super. 143, 146, 624 A.2d 187, 188-89 (1993) ("[o]ur Supreme Court has held that there is no limit to the jurisdiction of the arbitrators on issues submitted"). Therefore, unless the insurance policy expressly deprives the arbitrators of the ability to determine coverage issues, arbitrators generally determine whether an insured has effectively waived or reduced UM/UIM protection. See *e.g., Schultz v. Aetna Casualty and Surety Co.,* 443 Pa. Super. 659, 663 A.2d 166 (1995) (arbitrators decide the validity of an election of lower UM/UIM limits under 75 Pa.C.S. §1734). However, the UM/UIM insurance policy may restrict the au-

thority of the arbitrators and thereby reserve certain issues for a court of law. *McAlister v. Sentry Insurance Co.,* 958 F.2d 550, 554 (3d Cir. 1992) (questions concerning extent of coverage are for the arbitrators unless the policy language explicitly excludes such issues from the scope of arbitration). See also, Ronca, J.R.; Sloane, L.A.; Lutz, D.L.; Shollenberger, T.A.; and Mundy, J.F., Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law, §7.3, p. 128 (2d ed. 1998) (the general rule is that arbitrators have jurisdiction to decide most matters unless confined by the insurance policy). As a consequence, arbitrators may not consider bad faith claims predicated upon 42 Pa.C.S. §8371, *Nealy v. State Farm Mutual Automobile Insurance Co.,* 695 A.2d 790, 794 (Pa. Super. 1997), nor can arbitration proceedings be compelled in the absence of an arbitration clause in the policy. *McFarley v. American Independent Insurance Co.,* 444 Pa. Super. 191, 195, 663 A.2d 738, 741 (1995) ("the procedure to be followed in enforcement of uninsured motorist benefits, absent an actual contract containing an arbitration clause, . . . is the filing of a complaint in assumpsit").

In the case at bar, Colonial may only be compelled to submit to UIM arbitration if Calabrese qualifies for UIM benefits under the policy, and his entitlement to UIM coverage is contingent upon the validity of his rejection of UIM protection. The Calabrese-Colonial policy clearly states that questions regarding UM/UIM waivers are to "be decided by a court of law." Thus, the court must determine the threshold issue of whether Calabrese effectively rejected UIM protection under 75 Pa.C.S. §1731(c.1).

## (B) *Validity of UIM Rejection*

The Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., originally made UM/UIM coverages mandatory in Pennsylvania. The MVFRL was amended in 1990 to make UM/UIM protection optional provided that the insured was furnished with certain notices and information regarding the availability of such coverages and thereafter executed written rejections of UM/UIM protection. Ronca et al.; Pennsylvania Motor Vehicle Insurance, §§5.1, 5.5, at pp. 91-93, 99. To ensure that a policyholder makes an intelligent election, sections 1731(b) and (c) of the MVFRL prescribe specific language which must be utilized by insurers to effectuate a valid waiver by an insured of UM/UIM coverages. In furtherance of that goal, the statute provides:

*"(c.1) Form of waiver.*—Insurers *shall* print the rejection forms required by subsections (b) and (c) *on separate sheets* in prominent type and location. . . . Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. . . ." 75 Pa.C.S. §1731(c.1). (emphasis added)

The appellate courts of Pennsylvania have strictly enforced the waiver requirements set forth in section 1731(c.1). In *Lucas v. Progressive Casualty Insurance Co.,* 451 Pa. Super. 492, 680 A.2d 873 (1996), *alloc. denied,* 548 Pa. 619, 693 A.2d 589 (1997), the trial court concluded that the insured had affirmatively rejected UM and UIM protection even though the written waivers of UM and UIM coverages were printed on the same sheet of paper. In reversing the lower court and finding as a

matter of law that the insured was entitled to UM/UIM coverage due to the placement of both rejection forms on a single paper, the Superior Court held that "[t]he consequence of [the insurer's] failure to provide valid rejection forms, though severe in the present case where it is clear from the record that [the insureds] knowingly waived their underinsured coverage, is expressly mandated by section 1731(c.1) . . . ." *Id.* at 499, 680 A.2d at 877. Similarly, in *National Union Fire Insurance Co. v. Irex Corp.,* 713 A.2d 1145 (Pa. Super. 1998), the court again observed that "Section 1731 requires an insurer to use exact language and adhere to very specific technical rules in order to have an insured successfully reject UM coverage," and determined that a rejection of UM/UIM coverage was invalid since the insurer did not employ the precise language required by section 1731, and the insured did not execute separate documents for rejecting UM and UIM protection. *Id.* at 1149-50.

At least two courts have had an occasion to address the effectiveness of a waiver which places the rejection forms for UIM coverage and stacking of UIM limits on the same page. In *Estate of Franks v. Allstate Insurance Co.,* 895 F. Supp. 77 (M.D. Pa. 1995), "rejection of underinsured motorist protection" and "rejection of stacked underinsured motorist protection" appeared on a single sheet of paper and the insurer had obtained the approval of the Pennsylvania Insurance Department for the inclusion of both rejections on one form. *Id.* at 79-80. Finding that the waiver was valid under section 1731(c.1), the federal district court reasoned that although the rejection of UM coverage and UIM protection may not be printed on the same page, the waiver of UIM protection and stacked UIM coverage limits could be positioned on the same document. *Id.* at 81.

Several years later, the Superior Court of Pennsylvania considered the same issue in *Winslow-Quattlebaum v. Maryland Casualty Co.,* 723 A.2d 681 (Pa. Super. 1998), *alloc. granted,* 742 A.2d 172 (Pa. 1999), where the waiver form executed by the insured likewise contained "Rejection of underinsured motorist protection" and "Rejection of stacked underinsured coverage limits" on the same sheet of paper. In expressly declining to follow *Estate of Franks* and holding that the rejection of UIM coverage was void under section 1731(c.1), the *Winslow-Quattlebaum* court concluded:

"The statute clearly mandates that rejection of uninsured motorist coverage and underinsured motorist coverage be *on a separate sheet. Lucas, supra.* The statute expressly states that a rejection form that does not *specifically* comply with its mandates is void. Herein, it is not disputed that the rejection of underinsured motorist benefits was not on a separate piece of paper. Instead, it had other rejection language on it. If there is other language on a piece of paper, we simply cannot see how the document could comply specifically with the statutory language requiring the rejection to be on a separate sheet.

"The legislature obviously intended that an insured consider separately the weighty decision of whether to reject underinsured motorist coverage. The importance of the rejection is undermined when the paper contained other information and certainly, other rejection language." *Id.* at 684. (emphasis in original) Compare *Nationwide Mutual Insurance Co. v. Monteith,* 1997 WL 87280, *4 (E.D. Pa. 1997) (UM rejection form not void since it appeared on the same paper as the UM coverage authorization and UM coverage limits forms).

Instantly, the wording of Colonial's UIM rejection is a *verbatim* recitation of the language required by section

1731. However, not unlike the waiver in *Winslow-Quattlebaum,* the rejection of UIM protection that was executed by Calabrese was contained on the same piece of paper as the rejection form for stacked UIM coverage limits. Colonial notes that in contrast to the insured in *Winslow-Quattlebaum,* Calabrese merely signed the rejection form for UIM protection and did not execute the rejection of stacked UIM coverage limits. That distinction is insignificant since there would be no need for Calabrese to execute the rejection of stacked UIM coverage inasmuch as he only insured a single vehicle and would not be entitled to stack UM and UIM limits even if he had selected those coverages.

The plain language of 75 Pa.C.S. §1731(c.1) clearly states that the rejection forms for UM protection under section 1731(b) and UIM coverage under section 1731(c) must be printed on separate sheets and that the failure to do so will result in the policy being reformed to afford UM/UIM protection in an amount equal to the liability limits. Section 1731(c.1) does not expressly state that the waiver of UIM protection under section 1731(c) cannot be contained on the same page as the rejection of stacked UIM coverage limits under 75 Pa.C.S. §1738. Nevertheless, *Winslow-Quattlebaum* distinctly holds that the inclusion of section 1731(c) and section 1738 rejections on the same document renders the waiver of UIM coverage void under section 1731(c.1).

The validity of Calabrese's waiver of UIM protection is further compounded by Colonial's inclusion of the C1430 endorsement on the declarations page, which endorsement operates to incorporate supplemental provisions governing UIM coverage and the authority of arbitrators. If Calabrese had effectively waived UIM coverage, he would not have the ability to arbitrate a UIM

claim and the "Pennsylvania amendatory endorsement (C1430)" would be unnecessary. The inclusion of that endorsement could arguably lead an insured to believe that [s]he is entitled to UIM protection and arbitration.

Colonial posits that any decision in this case should be deferred pending a ruling by the Supreme Court of Pennsylvania in *Winslow-Quattlebaum*. While it is true that *allocatur* has been granted in *Winslow-Quattlebaum*, Colonial has not articulated any compelling reason for delaying the disposition of this matter any further. See *McClung v. Breneman*, 700 A.2d 495, 496 n.3 (Pa. Super. 1997) (declining to postpone consideration of an automobile insurance issue and noting that a prior decision by the Superior Court which has not been overturned remains binding precedent, even though the Supreme Court has granted *allocatur* in connection with that decision); *Sorber v. American Motorists Insurance Co.*, 451 Pa. Super. 507, 510, 680 A.2d 881, 882 (1996) (as long as a Superior Court decision has not been overturned by the Supreme Court, it constitutes binding precedent even though a petition for allowance of appeal is pending). Furthermore, a state trial court is bound to follow the ruling of a Pennsylvania appellate court on matters of state law, notwithstanding the fact that a federal district court may have reached a contrary conclusion. See *e.g., Martin v. Hale Products Inc.*, 699 A.2d 1283, 1287 (Pa. Super. 1997) ("[a]lthough it may not be unreasonable to cite one or two federal decisions and explain why it would be appropriate for the Superior Court to apply the rationale adopted by a federal court, the better course is to cite controlling Pennsylvania decisions"); *Dominick v. Statesman Insurance Co.*, 692 A.2d 188, 191 (Pa. Super. 1997) (reversing a trial court decision which "erroneously relied on" a federal court ruling rather than a state appellate ruling).

Based upon the Superior Court pronouncement in *Winslow-Quattlebaum,* the rejection of UIM coverage by Calabrese was ineffective under 75 Pa.C.S. §1731(c.1) since the waiver of UIM protection under section 1731 and the rejection of stacking of UIM benefits under section 1738 appeared on the same sheet of paper. 75 Pa.C.S. §1731(c.1) distinctly states that "[a]ny rejection form that does not specifically comply with this section is void," and in contradistinction to other provisions of the MVFRL, section 1731(c.1) furnishes a specific remedy for an invalid rejection by mandating that the insured be provided UIM coverage "equal to the bodily injury liability limits" of the policy. Compare *Salazar v. Allstate Insurance Co.,* 549 Pa. 658, 670, 702 A.2d 1038, 1044 (1997) (although the insurer failed to comply with the UM notice requirements in 75 Pa.C.S. §1791.1, the legislature failed to provide any statutory remedy for such noncompliance).

Consequently, an order will be entered declaring Calabrese's rejection form to be void and reforming the Colonial policy to provide UIM coverage of $15,000. Such a conclusion is consistent with the MVFRL's object of affording injured claimants the greatest possible UM/UIM coverage. See *Lucas, supra* at 499, 680 A.2d at 877; *Motorists Insurance Co. v. Emig,* 444 Pa. Super. 524, 538, 664 A.2d 559, 566 (1995); *Overfield,* 39 D.&C.4th at 564. Additionally, in light of the judicial declaration that Calabrese is entitled to UIM protection from Colonial, the motion to compel Colonial to submit to UIM arbitration will likewise be granted.

ORDER

And now, March 3, 2000, upon consideration of the motion to compel underinsured motorist arbitration filed

242

by plaintiff, David James Calabrese, and the counter-claim for declaratory judgment relief filed by defendant, Colonial Insurance Company, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The "Rejection of underinsured motorist protection" form executed by the plaintiff on April 10, 1997, is void under 75 Pa.C.S. §1731(c.1);

(2) The automobile insurance policy that the plaintiff purchased from the defendant which afforded coverage for the period from April 10, 1997 through October 10, 1997, is reformed to provide underinsured motorist coverage of $15,000; and

(3) The motion to compel defendant to submit to underinsured motorist arbitration is granted and the defendant is ordered to submit to underinsured motorist arbitration with the plaintiff pursuant to the provisions of the Pennsylvania Arbitration Act of 1927.