**Terry L. SALLADA and Bonnie L. Sallada, Plaintiffs,**

v.

**NATIONWIDE MUTUAL INSURANCE CO., Defendant.**

No. Civ. 1:CV–99–0381.

United States District Court, M.D. Pennsylvania.

April 11, 2000.

William C. Adrian Boyle, Kristina A. Bange, The Boyle Law Firm, P.C., York, PA, for Terry L. Sallada, Bonnie L. Sallada, plaintiffs.

James C. Haggerty, Swartz Campbell & Detweiler, Philadelphia, PA, for Nationwide Mutual Insurance Company, defendant.

## MEMORANDUM

RAMBO, District Judge.

Before the court are the parties' cross-motions for summary judgment. The parties have briefed the issues, and the motions are ripe for disposition.

### I. *Background*

This is an action for declaratory judgment filed by Plaintiffs Terry L. Sallada and Bonnie L. Sallada, insureds under an automobile insurance policy, against Defendant Nationwide Mutual Insurance Co., issuer of the policy. The parties have stipulated to the facts underlying Plaintiffs' claim, and agreed to have the captioned action resolved through the instant cross-motions for summary judgment.

#### A. *Facts*

The parties have stipulated to the following facts:

On November 12, 1998 Plaintiffs and their four minor children were involved in an automobile accident in which all six persons sustained injuries. Following the accident, Plaintiffs made a claim upon the other driver and his insurer, seeking recovery of tort damages in an amount greater than the limits of the driver's third-party liability coverage, namely

$300,000. The driver's insurer tendered the $300,000 liability limit to Plaintiffs pursuant to the driver's policy. Accordingly, Plaintiffs sought to maintain a claim for recovery of underinsured motorist benefits pursuant to their automobile insurance policy ("the Policy") with Defendant. Defendant denied Plaintiffs' claim for coverage of underinsured motorist benefits, contending that Mr. Sallada had rejected such benefits.

At the time of Plaintiffs' accident, the Auto Policy Declarations sent to Plaintiffs pursuant to the Policy indicated that Plaintiffs had the following coverages:

| | |
|---|---|
| Comprehensive | Actual cash value less $500.00 |
| Collision | Actual cash value less $500.00 |
| Property Damage Liability | $5,000 each occurrence |
| Bodily Injury Liability | $15,000 each person |
| | $30,000 each accident |
| | |
| Uninsured Motorist | |
|     Bodily Injury | $15,000 each person |
| Underinsured Motorist | REJECTED |
| First Party Benefits | |
|     Option 1—Medical Benefits | $5,000 |
|     Option 2—Income Loss Benefits | $5,000 Total |
| | $1,000 monthly |
|     Option 4—Funeral Benefit | $5,000 |
| Limited Tort | |

(Compl.Ex.A.)

At or about the time Mr. Sallada purchased the Policy from Defendant, Mr. Sallada was presented with a document entitled "Pennsylvania Underinsured Motorists Coverage Option Forms," which contained three provisions on one single page. (Compl.Ex.B.) The three provision on the page were as follows: (1) "Rejection of Underinsured Motorist Protection (UIM 1);" (2) "Underinsured Motorists Coverage Authorization Form (UIM 2);" (3) and "Underinsured Coverage Limits (UIM 3)." (*Id.*) Mr. Sallada executed the signature line beneath the first of the three provisions (UIM 1) and dated it October 9, 1998. He did not, however, sign below the remaining two provisions (UIM 2 or UIM 3).

**B.** *Procedural History*

Plaintiffs instituted the captioned action by filing a complaint in the Court of Common Pleas for York County, Pennsylvania on February 19, 1999. In their complaint, Plaintiffs allege that the rejection of underinsured motorist coverage signed by Mr. Sallada is violative of the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons. Stat.Ann. § 1701 *et seq.* Therefore, Plaintiffs request a declaratory judgment, reforming the Policy to include stacked, underinsured motorist insurance coverage in the amount of $15,000 per person and $30,000 per occurrence for three vehicles, for a total of $45,000 per person and $90,000 per occurrence.

On March 10, 1999 Defendant filed a notice of removal. Plaintiffs filed a motion to remand on March 23, 1999 which the court denied by order dated June 2, 1999.

Plaintiffs and Defendant filed the instant cross-motions for summary judgment on June 30, 1999 and July 2, 1999, respectively.

**II.** *Legal Standard: Motion for Summary Judgment*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *See id.* at 249, 106 S.Ct. 2505. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving parties, the non-moving parties may not simply sit back and rest on the allegations in [their] complaint; instead, they must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial. *See id.*

The standards governing the court's consideration of Federal Rule 56(c) cross-motions are the same as those governing motions for summary judgment, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the nonmovants. *See Raymond Proffitt Found. v. U.S. Envt'l. Protection Agency,* 930 F.Supp. 1088, 1096 (E.D.Pa.1996).

## III. *Discussion*

The issue before the court in the instant case is a narrow one: Whether Terry L. Sallada validly rejected underinsured motorist coverage from Defendant when he signed the "UIM 1" form presented to him by Defendant, despite the fact that the page containing said form also contained additional forms—namely, "UIM 2" and "UIM 3." In particular, the court must determine whether the form provided by Defendant was in compliance with the requirements of 75 Pa.Cons.Stat.Ann. § 1731(c. 1).

The parties' proposed inquiries differ slightly, in accordance with their respective reliance upon Pennsylvania federal district court and state intermediate appellate court cases which provide conflicting interpretations of § 1731(c. 1). Specifically, Plaintiffs rely upon the case of *Winslow-Quattlebaum v. Maryland Casualty Co.,* 723 A.2d 681 (Pa.Super.1999), *rearg. denied* (Feb. 18, 1999), *allowance of appeal granted,* 742 A.2d 172 (Pa. Aug 12, 1999) (Table),[1] while Defendant relies upon the cases of *Estate of Franks v. Allstate Ins. Co.,* 895 F.Supp. 77 (M.D.Pa.1995), and *Nationwide Mutual Ins. Co. v. Monteith,* No. 96–7907, 1997 WL 87280 (E.D.Pa.February 26, 1997). Each of the above-cited cases address the very issue which confronts this court. The parties correctly acknowledge that the Pennsylvania Supreme Court has not addressed this issue; accordingly, the court will address the cases relied upon by the parties in attempting to predict how the Commonwealth's highest court will interpret the statute at issue. *See U.S. Underwriters Ins. Co. v. Liberty Mutual Ins. Co.,* 80 F.3d 90, 93 (3d Cir.1996).

The required forms to be used by insurers under Pennsylvania law for waiver of

---

1. The court notes that the Pennsylvania Supreme Court had not yet granted the petition for allowance of appeal in *Winslow-Quattlebaum* as of the date on which the instant motion was filed and fully briefed. Additionally, the court notes that *Winslow-Quattleb-aum* was argued before the Supreme Court on February 1, 2000; however an opinion has not been filed as of the date of the instant memorandum and no indication as to when such opinion will be filed was available to this court.

uninsured motorist ("UM") coverage and underinsured motorist ("UIM") coverage are addressed in §§ 1731(b) and (c), respectively. Section 1731(b) provides that the following specific form shall be signed in order for an insured to validly reject UM coverage:

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Signature of First Named Insured

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Date

75 Pa.Cons.Stat.Ann. § 1731(b). Similarly, § 1731(c) provides, in relevant part:

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Signature of First Named Insured

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Date

*Id.,* § 1731(c). The form of the above waivers are further addressed in § 1731(c. 1), which provides, in relevant part, as follows:

(c. 1) **Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) *on separate sheets* in prominent type and location.... Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.... Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

*Id.,* § 1731(c. 1) (emphasis supplied).

The *Franks* court interpreted § 1731(c. 1)'s requirement that the waiver forms for UM and UIM coverage be printed on "separate sheets" to mean that "these two forms cannot be printed on the same page, but [does not require] that they be separate from other provisions." *Franks,* 895 F.Supp. at 81. The *Franks* court further reasoned that:

[T]he language following "separate sheets" supports this reading: there is no reason to print a waiver "in prominent type and location" if the waiver is the only form printed on a page. [The insured's] interpretation of this provision would render the "in prominent type and location" language meaningless. *But see* 1 Pa.Cons.Stat.Ann. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all of its provisions").

A reading of the entire sentence, then, leads to the conclusion that the forms set forth in § 1731(b) and (c) may not be printed on the same page, but are not required to be printed on their own page.

*Id.*

Following *Franks,* the *Monteith* court also interpreted § 1731(c. 1) to require that a UM and UIM coverage waiver be printed on separate sheets of paper, but not to require that such waivers be separate from any other provision. *See id.,*

·1997 WL 87280, at * 3. In addition to adopting the rationale set forth in *Franks,* the *Monteith* court reasoned as follows:

> Giving the first sentence of § 1731(c. 1) ... its plain meaning can only lead to the conclusion that the legislature intended that the rejection form contained in subsection (b) (uninsured coverage) was to be on a separate sheet of paper from the rejection form contained in subsection (c) (underinsured coverage). The legislature obviously wanted to make sure that an insured recognized and considered the important difference between waiving uninsured coverage and waiving underinsured coverage. Therefore, it required that the waivers be on separate sheets of paper from each other. There is no evidence in the first sentence of § 1731(c. 1) nor in any other part of § 1731 for that matter of any legislative intent to require that each waiver appear on a separate sheet of paper from any provision ... [The insured's] interpretation of the first sentence simply stretches its plain meaning too far.

*Id.* at 1997 WL 87280, * 3.

Plaintiffs rely upon *Winslow–Quattlebaum,* 723 A.2d 681, which the Pennsylvania Superior Court decided after the foregoing federal district court decisions. In fact, the *Winslow–Quattlebaum* court cited *Franks* and *Monteith* with disapproval, stating that "a federal court's interpretation of state law does not bind state courts; instead, state courts are the principal interpreters of state law." *Winslow–Quattlebaum,* 723 A.2d at 684 (citation omitted). The Winslow court interpreted 1731(c. 1) to require that UM and UIM coverage waivers be on "separate sheets" such that these two waivers are not only separated from each other, but on pieces of paper separate from any other language altogether. *See id.* at 684. In so concluding, the *Winslow–Quattlebaum* court stated as follows:

> Herein it is not disputed that the rejection of underinsured motorist benefits was not on a separate piece of paper. Instead, it had other rejection language on it. If there is other language on a piece of paper, we simply cannot see how the document could comply specifically with the statutory language requiring the rejection to be on a separate sheet.
>
> The legislature obviously intended that an insured consider separately the weighty decision of whether to reject underinsured motorist coverage. The importance of the rejection is undermined when the paper contains other information and certainly, other rejection language.

*Id.* at 684.

The court finds the foregoing reasoning unpersuasive—particularly in light of the sound conclusions reached in *Franks* and *Monteith.* Pointedly, the *Winslow–Quattlebaum* court rejected *Franks* and *Monteith* outright without providing any distinction or rationale for departing from their conclusions. *See Winslow–Quattlebaum,* 723 A.2d at 684. Thus, the *Winslow–Quattlebaum* court's conclusion that "[t]he importance of the [waiver] is undermined when the paper contains other information" *id.* at 684, is belied by the *Franks* court's determination that such an interpretation renders part of the statutory language superfluous. *See Franks,* 895 F.Supp. at 81 ("there is no reason to print a waiver 'in prominent type and location' if the waiver is the only form printed on a page."). Moreover, the court believes that the *Winslow–Quattlebaum* court fails to adequately address exactly how the plain language supports its broad reading of the words "separate sheets." Rather than provide the logic behind its conclusion, the court merely states, in conclusory fashion, that "if there is other language on a piece of paper, we simply cannot see how the document could comply specifically with the statutory language." *Id.,* 723 A.2d at 684. As such, this court predicts that the Supreme Court of Pennsylvania will reverse *Winslow–Quattlebaum* and interpret

§ 1731(c. 1) consistently with *Franks* and *Monteith*.

■ For the foregoing reasons, the court concludes that § 1371(c. 1) merely requires that the waiver forms for UM and UIM coverage be on sheets of paper separate from each other—not that they be on sheets of paper separate from any other language. Therefore, because it is undisputed that the UIM coverage waiver signed by Terry Sallada was, in fact, on a separate piece of paper from any waiver form for UM coverage, the court concludes that Plaintiffs' UIM coverage waiver was valid as a matter of law. Accordingly, the court will grant Defendant's motion for summary judgment as to Plaintiffs' request for a declaratory judgment.[2]

## IV. *Conclusion*

In accordance with the foregoing discussion, the court will award summary judgment in favor of Defendant and against Plaintiffs. An appropriate order will issue.

### ORDER

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

(1) Defendant's motion for summary judgment is **GRANTED.**

(2) Plaintiffs' motion for summary judgment is **DENIED.**

(3) The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiffs and close the case.

---

**2.** Additionally, Defendant's motion will be granted insofar as Plaintiffs' request for costs and attorney's fees is concerned. Although a decision by a Pennsylvania appellate court established Defendant's liability, *see Winslow-Quattlebaum*, 723 A.2d 681, in light of the Supreme Court's subsequent grant of the request for appeal, and in light of this court's conclusions regarding Defendant's liability, there is no basis for an award of costs or fees to Plaintiffs.